Josephine KUS, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 11604.

United States Court of Appeals
Seventh Circuit.

July 6, 1956.

Rehearing Denied Aug. 8, 1956.

Peter Fitzpatrick, Chicago, Ill., Finn & Fitzpatrick, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., and Richard Mayer, Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiff, Josephine Kus, brought this action for damages for personal injuries against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b).

The complaint alleged that while plaintiff was walking in the lobby of the Marshall Field Annex Building in Chicago, Illinois, Sam Wallace, while acting within the scope of his employment as a mail carrier for the United States, carelessly and negligently collided with the plaintiff and knocked her down onto the floor of the building lobby, thereby seriously and permanently injuring her.

The defendant's answer denied that the mail carrier, Wallace, was negligent and denied that Wallace's negligence was the proximate cause of the plaintiff's injuries. The answer alleged that any injury or damage to the plaintiff was caused by her own carelessness and negligence.

The trial court decided that the plaintiff's fall and injuries were not caused by the negligence of the mail carrier, and that the plaintiff had not shown that she was using due care in her own behalf. The court therefore entered judgment for the defendant.

The trial court saw and heard the witnesses testify. Essential parts of the testimony of the various witnesses were contradictory. This court may not set aside findings of fact of a trial court unless such findings are clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

At the time of the accident the plaintiff was on her way to the shop where she worked on one of the upper floors of the building in the lobby of which the accident occurred. She was due at her work at 9:00 A.M. The collision between the plaintiff and Wallace, the mailman, occurred at 8:50 A.M. in the street floor corridor of the building. This corridor extends east and west; and on the south side of the corridor, at the east end thereof, there is a cigar and candy counter, then a mail box which extends out from

the south wall of the corridor about two feet and then a row of eight elevators. The corridor is twelve to fifteen feet wide.

On the morning in question the plaintiff entered the building at the east entrance of the corridor and proceeded west toward the elevators. Plaintiff said that she was walking in about the center of the lobby; that the collision occurred in front of the second elevator at a point about two or three feet west of the first elevator; that just prior to the collision with the mailman she had heard the door of the first elevator click, signifying that it was down. Plaintiff testified that she took only a couple more steps and was struck from behind on her left side and fell to the floor. She said that as she fell she heard Wallace say, "I am awfully sorry, I didn't mean to do that." At the time of the accident plaintiff was walking west toward the third elevator which was ready to admit passengers. Plaintiff said that she did not see Wallace before she was knocked to the floor. After the accident Wallace and the elevator starter helped the plaintiff up and placed her on a chair in the lobby.

On cross-examination the plaintiff testified that as she passed the second elevator she was looking and walking directly west, that she continued to look in the direction she was walking and that she "was not looking about at all." Plaintiff denied that at the time of the accident she told Carl Hendrey, the elevator starter, that she "had just looked away for a moment, to look at the clock." Plaintiff said that in the collision Wallace struck her left side behind her left shoulder, and that she then fell "right in the spot" where she was walking.

Carl Hendrey, the elevator starter who was the only eyewitness to the collision, testified that at the time of the accident he was standing by the third elevator from the east entrance of the building and was loading passengers in that elevator. Hendrey testified that he saw the plaintiff and Wallace "coming together" but that "it was too late to holler or anything." He said that the plaintiff and Wallace were then about three and a half feet apart and that he saw them both at the same time. Hendrey said that the plaintiff was then facing west and was walking toward the west, that Wallace was looking southwest and was walking toward the north, and that Wallace's right shoulder and plaintiff's left shoulder collided. Hendrey testified further that neither party was walking very fast and that plaintiff was moving toward elevator No. 3 which was the second elevator west of the elevator from which Wallace came out into the corridor. He said that the plaintiff had to pass the passengers, including Wallace, who were then unloading from elevator No. 1. Hendrey said that he looked at elevator 1 to see who was getting out and that he saw Wallace step out and take "this sideward step, this sideward motion of his." He said that the shoulders of the plaintiff and Wallace did not strike squarely because "Mr. Wallace was sort of on that angle." Hendrey testified that in his report of the accident—a report he was required to make to the management of the building—he stated: "Miss Kus remarked that she was looking at the clock as she came into the building and didn't see the mailman coming out of the elevator."

Sam Wallace, the mail carrier, testified that he had been carrying mail in the Marshall Field Annex Building since 1951; that on the morning of the accident, after he had completed his first mail delivery in the building, he came down in the elevator with two other men and the elevator operator; that he stepped out into the lobby; and that the next thing he knew the plaintiff was against his right arm and shoulder. Wallace said that he was carrying an empty mail bag over his left shoulder and that there was nothing in the lobby of the building to impede his vision as he came out of the elevator except a mail box which only extended out about two feet from the south wall of the corridor. He said that as far as he could remember he was looking straight ahead as he came out of the elevator and that he did not see the plain-

tiff as she approached. Wallace testified that in his collision with plaintiff his right side, right shoulder and right arm were struck, and that he "imagined" that plaintiff's chest was struck but that he could not say positively. Wallace said that he tried to break the plaintiff's fall and then apologized and told her how sorry he was. He said that plaintiff then said that she was sorry too, that "she had just looked up at the clock for a fraction of a second and there I was." Wallace said that it appeared to him that when Miss Kus hit him she bounced back and lost her balance. He said that he did not have an opportunity to see where the plaintiff was looking as she approached him. On cross-examination Wallace admitted that in a deposition taken prior to the trial he stated that he had not seen the plaintiff until she had fallen to the floor. Wallace also testified that as he left the elevator he was walking straight north and that he was looking in that same direction until he and the plaintiff collided.

On all of the contradictory testimony found in this record we cannot say that the findings of the trial court in this case were clearly erroneous. It is true that at the trial the plaintiff insisted that she was walking and looking straight ahead as she entered the building and came down the corridor. It is also true that at the trial Carl Hendrey, the only eye witness to the accident, testified that the plaintiff was looking in the direction in which she was walking. But Hendrey's official report of the accident, made on the day of the accident, contained the statement: "Miss Kus remarked that she was looking at the clock as she came into the building and didn't see the mailman coming out of the elevator." And, as we have pointed out above, Mr. Wallace also testified that the plaintiff, at the time of the accident, said that she had just looked up at the clock.

This accident occurred on January 11, 1952, and the case was tried in August 1955. It is understandable that the trial judge may have given more weight to the official report of the accident made by Hendrey on the day of the accident than to the statements made by the plaintiff and by Hendrey during the trial. We cannot say that the findings of the trial court were clearly erroneous.

The judgment of the District Court must be, and it is

Affirmed.